FILED
 2015 Apr-10 PM 01:04
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION, ) ) ) Plaintiff-Counterclaim Defendant, ) ) vs. ) ) NORMAN D. ANCHRUM, JR., and ) ANDREA ANCHRUM, ) ) Defendants-Counterclaimants, ) ) vs. ) ) WELLS FARGO BANK NATIONAL ) ASSOCIATION; UNITED GUARANTY ) RESIDENTIAL INSURANCE COMPANY; ) UNITED GUARANTY RESIDENTIAL ) INSURANCE COMPANY OF NORTH ) CAROLINA, ) ) Counterclaim Defendants. ) | Case No. 2:14-cv-2129-TMP |

REPORT AND RECOMMENDATION

This cause is before the court on the motion for partial dismissal filed by the plaintiff-counterclaim defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") and counterclaim defendant Wells Fargo Bank N.A. ("Wells Fargo") on November 7, 2014 (Doc. 10). The motion was joined and adopted by counterclaim defendants United Guaranty Residential Insurance Company and United Guaranty Residential Insurance Company of North Carolina (collectively "UGC") on November 11, 2014. (Doc. 12). The motion seeks the dismissal of some, but not all, counts of the counterclaim filed by Norman and Andrea Anchrum on September 21, 2014, in the Circuit Court of Shelby County, Alabama, prior to the removal of

the case on October 31, 2014. The motion has been fully briefed by the parties. (See Docs. 25, 26, and 27). The parties have not consented to the exercise of dispositive jurisdiction by the undersigned magistrate judge.

I. Procedural History and Facts Alleged

On August 7, 2014, plaintiff Freddie Mac sued the Anchrums in the Circuit Court of Shelby County, Alabama, for ejectment, alleging that Freddie Mac became the owner of property located at 552 North Grande View Trail, Alabaster, Alabama, following foreclosure of a mortgage on the property by Wells Fargo. Attached to the complaint was a copy of the foreclosure deed to Freddie Mac dated December 5, 2011. The Anchrums filed their answer and counterclaim on September 21, 2014, joining as additional counterclaim defendants, Wells Fargo and UGC. The counterclaim alleges seven causes of action for breach of contract (Count One), wrongful foreclosure (Count Two), unjust enrichment (Count Three), slander of title (Count Four), breach of covenant of good faith and fair dealing (Count Five), declaratory judgment (Count Six), and violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k *et seq*. (Count Seven). In support of these claims, the Anchrums' counterclaim alleged factually that they purchased their home in Alabaster on September 5, 2003, financing it with a loan from Wells Fargo in the amount of $305,790.00. On that date, Norman Anchrum (but not Andrea Anchrum) executed a promissory note in favor of Wells Fargo. The note was secured by a mortgage on the property executed by both Norman and Andrea Anchrum. (See Doc. 10-1).[1]

---

[1] The promissory note was annexed as an exhibit to the Anchrums' answer and counterclaim and thus is considered part of the pleading itself for purposes of this motion. Fed. R. Civ. P. 10(c). The mortgage was not made an exhibit to the answer and counterclaim, but it is referred to in the pleading and is central to it. Under circuit precedent, a document central to a pleading and whose authenticity is not disputed, but which was not offered as an exhibit to the

As part of the loan agreement, Wells Fargo required the Anchrums to purchase and pay for private mortgage insurance covering 25% of the mortgage balance, which PMI was purchased from UGC. The counterclaim alleges that on October 17, 2011, the Anchrums received a "default letter" from Wells Fargo. (Counterclaim, ¶ 16, Doc. 1-3).[2] During this same time period, the Anchrums appear to have been in discussions with Wells Fargo about restructuring their mortgage to prevent foreclosure. By October 25, 2011, Wells Fargo acknowledged that the Anchrums had submitted documentation sufficient to allow Wells Fargo to decide upon possible restructuring. (See Counterclaim Ex. C, Doc. 1-4). In correspondence dated November 28, 2011, however, Wells Fargo notified the Anchrums that they did not qualify for mortgage debt relief under the Home Affordable Modification Program ("HAMP"). (Counterclaim, Ex. E, Doc. 1-4).[3] The mortgage foreclosure sale proceeded on December 5, 2011, resulting in Freddie Mac purchasing the property and receiving a foreclosure deed.

The instant motion to dismiss challenges only Counts Three, Five, and Seven of the counterclaim, for unjust enrichment, breach of the covenant of good faith and fair dealing, and violations of the FDCPA. Freddie Mac, Wells Fargo, and UGC contend that, under the facts

---

pleading itself, can be supplied as an exhibit to a motion to dismiss the pleading without converting the motion to one under Rule 56. "[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005), citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). Thus, the mortgage attached to the motion to dismiss may be considered by the court without the necessity of converting the instant motion to dismiss into a motion for summary judgment. The court has not considered, and hereby excludes for purposes of this motion, other exhibits annexed to the motion to dismiss because they appear to be in dispute.

[2] A copy of this default letter is not supplied by any party.

[3] The court notes that the letter advising the Anchrums of their rejection under HAMP was addressed to them at "552 N. Grande View Trl, **Maylene, AL 35411-6051**." Likewise, they received another letter from Wells Fargo dated November 30, 2011, at the same Maylene address. Additionally, they received a letter from UGC at the Maylene address. (Counterclaim Ex. D, Doc. 1-4). All three letters are attached as exhibits to the Anchrums' counterclaim.

3

alleged in the counterclaim, Alabama law simply does not recognize causes of action for unjust enrichment and breach of a covenant of good faith and fair dealing. Moreover, they argue that none of them can be liable under the FDCPA because none of them is a debt collector.

II.  Standards for Assessing Motions to Dismiss

On a motion to dismiss a pleading seeking relief, the court must analyze the pleading pursuant to the pleading standards set forth in Fed. R. Civ. P. 8(a), as construed by the Supreme Court of the United States in <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 554, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  These standards replace and enhance those outlined in <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), which allowed a claim to survive a motion to dismiss unless it could be shown "beyond doubt that the Plaintiff can prove no set of facts in support of his claim that would entitled him to relief."  <u>Id.</u> at 45-46.  According to <u>Twombly</u>, <u>Conley</u> has been put out to "retirement," <u>Twombly</u> at 563, or "interred," <u>id.</u> at 577 (Stevens, J., dissenting).

The Supreme Court commented in 2007 on Rule 12(b)(6) dismissals, saying:

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1216 pp. 235-236 (3d ed. 2004) (hereinafter

4

> Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), ….
>
> . . .
>
> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [the alleged claims] reflect the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief."

Bell Atlantic Corp. v. Twombly, 550 U.S. 544-70, 127 S. Ct. 1955, 1964-74, 167 L. Ed. 2d 929 (2007) (internal footnotes omitted). In Twombly, the Supreme Court clearly raised the threshold for factual allegations in a complaint from "conceivable" to "plausible." Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010); Rivell v. Private Health Care Systems, Inc., 520 F.3d 1308, 1309 (11th Cir. 2008); Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009); Financial Securities Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir. 2007)). Mere legal conclusions are insufficient substitutes for factual allegations.

Two years after the Twombly decision, the Supreme Court again discussed pleading requirements in the Ashcroft v. Iqbal decision. 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009):

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555, 127, S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556, 127 S. Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task

> that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusion can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 667-84, 129 S. Ct. at 1949-52. The Eleventh Circuit Court of Appeals has applied Iqbal, noting that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Speaker v. Dept. of Health and Human Services, 623 F.3d 1371, 1380 (11th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

The court of appeals has taken the Supreme Court's admonition to heart. "The Supreme Court's most recent formulation of the pleading-specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Watts v. Florida Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007), quoting Twombly, 127 S. Ct. At 1965. The rule does not "impose a probability requirement at the pleading stage;" instead the standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the elements of the claims. Twombly, 127 S. Ct. at 1965. "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" Watts, 495 F.3d at 1296, quoting Twombly, 127 S. Ct. at 1965.

III.  Discussion

The essence of the Anchrums' counterclaim is that the counterclaim defendants breached the agreements in the promissory note and mortgage by wrongfully accelerating the note and declaring it to be in default, leading to a wrongful foreclosure.  Whether there was a breach of the note or mortgage, or whether the foreclosure was wrongful, are not currently before the court.  The only issues raised by the instant motion is whether these basic facts, as alleged in the counterclaim, support claims for unjust enrichment, breach of an *implied* covenant of good faith and fair dealing, and for violations of the FDCPA.

    *A.  Unjust Enrichment*

The Alabama Supreme Court has described the doctrine of unjust enrichment this way:

> In order for a plaintiff to prevail on a claim of unjust enrichment, the plaintiff must show that
>
>> "the '"defendant holds money which, *in equity and good conscience*, belongs to the plaintiff or holds money which was improperly paid to defendant because of *mistake or fraud*."' Dickinson v. Cosmos Broad. Co., 782 So. 2d 260, 266 (Ala. 2000) (quoting Hancock–Hazlett Gen. Constr. Co. v. Trane Co., 499 So. 2d 1385, 1387 (Ala. 1986)).... 'The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another.' Battles v. Atchison, 545 So. 2d 814, 815 (Ala. Civ. App. 1989)."
>
> Avis Rent A Car Sys., Inc. v. Heilman 876 So. 2d 1111, 1123 (Ala. 2003). "'One is unjustly enriched if his retention of a benefit would be unjust.'" Welch v. Montgomery Eye Physicians, P.C., 891 So. 2d 837, 843 (Ala. 2004) (quoting Jordan v. Mitchell, 705 So. 2d 453, 458 (Ala. Civ. App. 1997)).  The retention of a benefit is unjust if
>
>> "'(1) the donor of the benefit ... acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit ... engaged in some unconscionable conduct, such as fraud, coercion,

> or abuse of a confidential relationship. In the absence of mistake
> or misreliance by the donor or wrongful conduct by the recipient,
> the recipient may have been enriched, but he is not deemed to have
> been unjustly enriched.' "
>
> Welch, 891 So. 2d at 843 (quoting Jordan, 705 So. 2d at 458). The success or
> failure of an unjust-enrichment claim depends on the particular facts and
> circumstances of each case. Heilman, *supra*.

Mantiply v. Mantiply, 951 So. 2d 638, 654-55 (Ala. 2006); Jordan v. Mitchell, 705 So. 2d 453, 458 (Ala. Civ. App. 1997); Carroll v. LJC Def. Contracting, Inc., 24 So. 3d 448, 459 (Ala. Civ. App. 2009).

Counterclaim defendants contend that because an express contract existed between the parties in the form of the note and mortgage, the Anchrums cannot rely on a theory of unjust enrichment. They cite the case of Pattans Ventures, Inc., v. Williams, 959 So. 2d 115, 117 n. 2 (Ala. Civ. App. 2006), for the proposition that unjust enrichment cannot lie in the face of an express contract. Indeed, footnote 2 in the opinion says precisely that, but is arguably only *dicta*. Most of the other Alabama authorities on unjust enrichment make no mention of this limitation. Many Alabama cases hold that a claim based on implied contract is inconsistent with the existence of an express contract, see e.g., Vardaman v. Florence City Bd. of Educ., 544 So. 2d 962, 965 (Ala. 1989); Brannan & Guy, P.C. v. City of Montgomery, 828 So. 2d 914, 921 (Ala. 2002), but it is not clear to the court that a claim for unjust enrichment is necessarily predicated on an implied contract theory. The description of unjust enrichment quoted above from Mantiply emphasizes that it is an equitable remedy intended to prevent an *unjust* enrichment of one party to the detriment of another through mistake, fraud, coercion, breach of fiduciary duty,

or other misconduct by the benefited party. Unjust enrichment and implied contract are different theories of recovery.[4]

In any event, the court agrees that the Anchrums have not pleaded a sufficient claim for unjust enrichment. In Count Three of their counterclaim, the Anchrums allege that "the Counter-Defendants" enriched themselves by "foreclosing on the home of Counterclaimants in violation of the law" which "resulted in Counter Defendants being unjustly enriched by the payment of fees, insurance proceeds, and equity in the home." They identify three forms of enrichment by "the Counter-Defendants": (1) Wells Fargo accepted and received payments from the Anchrums it would not otherwise have received, (2) Wells Fargo and Freddie Mac received the full market value of their home on the basis of a lesser foreclosure bid, and (3) Wells Fargo and Freddie Mac received PMI insurance proceeds of approximately $160,000 from UGC.

At the outset, it is apparent that none of these theories of enrichment accrued to the benefit of UGC. UGC received no money or value from the foreclosure, but, instead, paid out PMI insurance proceeds. It cannot be said, therefore, that the UGC defendants enriched themselves to the detriment of the Anchrums. UGC is entitled to dismissal of the unjust enrichment claim against it.

Next, none of the specific allegations of enrichment by Wells Fargo and Freddie Mac alleges any *unjust* enrichment (or, perhaps, any enrichment at all). The counterclaim makes

---

[4] There is Alabama case authority that frequently equates unjust enrichment with *quantum meruit* or quasi-contract (or contracts implied-in-law), but quasi-contract is not the same as an implied-in-fact contract. Under an implied-in-fact contract theory, the intention of the parties to contract is implied from the facts, so that an actual contract is found to exist. Quasi-contract disregards the intention to the parties in order to prevent one party from unjustly enriching himself to the detriment of another. See Jewett v. Boihem, 23 So. 3d 658, 661 (Ala. 2009). Alabama case authority arising in the context of implied contract does not necessarily establish the rule that an expressed contract precludes a remedy for quasi-contract or unjust enrichment.

plain that Norman Anchrum owed payments to Wells Fargo from the note the Anchrums used to purchase their home in 2003, and that the home itself was mortgaged to secure the note. Whatever payments Well Fargo received under the terms of the note were not *unjust*, they were owned under the terms of the note and/or mortgage. The Anchrums do not allege in the counterclaim that they were tricked or defrauded into paying any amounts other than what they were obligated to pay under the terms of the note and mortgage. They seem to imply that, if Wells Fargo had told them of the impending foreclosure, they would have not made certain payments to Wells Fargo. That they made payments they were contractually obligated to make is hardly an unjust enrichment of Wells Fargo. Cf. Hancock-Hazlett Gen. Const. Co. v. Trane Co., 499 So. 2d 1385, 1387 (Ala. 1986) (subcontractor supplying HVAC equipment was not unjustly enriched by payment owed to it for the equipment). They cannot complain that Wells Fargo was *unjustly* enriched by payments they made toward the debt they admit they owed Wells Fargo.

To the extent the Anchrums argued that Wells Fargo and/or Freddie Mac received the full market value of their home through a wrongful foreclosure, this raises claims for breach of contract or wrongful foreclosure, not unjust enrichment. If the foreclosure was wrongful, the Anchrums' remedy is breach of contract or wrongful foreclosure, and they are not entitled to a separate equitable remedy when there is a remedy available at law. If the foreclosure was not wrongful, Wells Fargo and Freddie Mac did not *unjustly* enrich themselves, but only invoked their rights under the note and mortgage.[5]

---

[5] Furthermore, it is apparent that Wells Fargo did not "enrich" itself. It is undisputed that Wells Fargo had advanced money to the Anchrums in the form of a loan, and the foreclosure did nothing but recoup the money Wells Fargo was out for the loan. The collection of a debt by a creditor is not unjust enrichment.

10

Finally, the Anchrums allege that Wells Fargo and Freddie Mac received private mortgage insurance payments from UGC. Even if one might conclude that Wells Fargo and Freddie Mac benefited from this payment, there is no indication that it harmed the Anchrums. A clear element of unjust enrichment is that the party seeking the remedy must allege and prove that he suffered a detriment due to the misconduct of the benefited party. The Anchrums have not alleged that they suffered any detriment from the payments made by UGC.

The court agrees, therefore, that the motion to dismiss the counterclaimants' unjust enrichment claim (Count Three of the counterclaim) is due to be granted.

### B. *Breach of Implied Covenant of Good Faith and Fair Dealing*

Count Five of the counterclaim alleges that the foreclosure was a breach of Wells Fargo's and/or Freddie Mac's implied contractual covenant of good faith and fair dealing. The counterclaim defendants contend that such a covenant exists only in insurance contracts and has never been extended to other types of contracts under Alabama.

Since at least 1939, Alabama law has recognized that *every* contract contains an implied covenant of good faith and fair dealing. See World's Exposition Shows v. B.P.O. Elks, No. 148, 237 Ala. 329, 331, 186 So. 721, 723 (1939) ("Every contract, as has been often stated, implies good faith and fair dealing between the parties."). As recently as 2009, in *dicta*, the Alabama Supreme Court wrote:

> " ' "There is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract; ... in every contract there exists an implied covenant of good faith and fair dealing.' " ' (quoting Sellers v. Head, 261 Ala. 212, 73 So.2d 747, 751 (1954))[ ]. See also Restatement (Second) of Contracts § 205 (1981) ('Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.')." Hunter v. Wilshire Credit Corp., 927 So. 2d 810, 813 n. 5 (Ala. 2005) (quoting Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth., 837 So. 2d 253, 267 (Ala. 2002)).

11

Shoney's LLC v. MAC EAST, LLC, 27 So. 3d 1216, 1220 n. 5 (Ala. 2009); see also Hunter v. Wilshire Credit Corp., 927 So. 2d 810, 813 n. 5 (Ala. 2005).  This does not mean however, that a breach of the implied covenant carries with it a tort remedy for bad faith.

> Although every contract does imply good faith and fair dealing (see § 7-1-203, Code 1975), it does not carry with it the duty imposed by law which we have found in the context of insurance cases.  We are not prepared to extend the tort of bad faith beyond the area of insurance policy cases at this time.  See Brown-Marx Associates, Ltd. v. Emigrant Savings Bank, 527 F.Supp. 277 (N.D.Ala. 1981).

Kennedy Elec. Co. v. Moore-Handley, Inc., 437 So. 2d 76, 81 (Ala. 1983); see also Tanner v. Church's Fried Chicken, Inc., 582 So.2d 449, 451 (Ala.1991); Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Alabama Power Co., 601 So. 2d 942, 944 (Ala. 1992).  The remedy for a breach of the implied covenant is a claim for breach of the contract, but only then if there is a breach of a specific provision of the contract.

> Neither is the plaintiffs' bad faith claim viable under *contract* law, whether there is an express or implied obligation of good faith. Tanner v. Church's Fried Chicken, 582 So. 2d at 451-52; Government Street Lumber Co. v. AmSouth Bank, N.A., 553 So. 2d 68, 72 (Ala. 1989).  In the cases relied upon by the plaintiffs, this Court did not recognize a bad faith claim under contract law absent a breach of a specific term of the contract.
>
> * * *
>
> This Court has explicitly held that there is no good faith contractual cause of action, Tanner v. Church's Fried Chicken, *supra*; Government Street Lumber Co. v. AmSouth Bank, *supra*; that means that bad faith is not actionable absent an identifiable breach in the performance of specific terms of the contract.  There is no identifiable breach in the performance of the specific terms of the license agreement by Alabama Power; and there is no contractual cause of action for breach of an implied duty of good faith that nebulously hovers over the contracting parties, free from the specific terms of the contract.

12

Lake Martin/Alabama Power Licensee Association, Inc. v. Alabama Power Co., 601 So. 2d 942, 944-945 (Ala. 1992) (italics added).  Alabama courts have made clear that the implied covenant of good faith is "directive, not remedial."  Tanner v. Church's Fried Chicken, Inc., 582 So. 2d 449, 452 (Ala. 1991), citing Government Street Lumber Co. v. AmSouth Bank, 553 So. 2d 68 (Ala.1989). Thus, a contract claim for breach of an implied covenant of good faith and fair dealing provides no remedy separate and apart from the breach of a specific contract provision.  Unless a party to a contract can point to a breach of a *specific* provision in the contract, there is no breach of an implied duty.  But if the party is able to point to a breach of a specific provision in the contract, that breach itself supports a claim for breach of contract without the necessity of a "nebulously hover[ing]" implied covenant.  Because the implied covenant is "directive, not remedial," it provides no separate cause of action.  Therefore, this claim also is due to be dismissed.

    C. *Violation of FDCPA*

The Anchrums allege in Count Seven of the counterclaim that Wells Fargo[6] violated provisions of the Fair Debt Collection Practices Act, but they do not identify any particular provision of the Act they contend Wells Fargo violated.  Indeed, paragraph 73 of the counterclaim alleges only that "Counterclaim Defendant Wells Fargo has reported inaccurate credit information to the three major credit reporting agencies."[7]  Nowhere in the counterclaim

---

    [6] The allegations in Count Seven are limited explicitly to counterclaim defendant Wells Fargo. (See Counterclaim ¶ 72, Doc. 1-3). Accordingly, insofar as Freddie Mac and UGC seek dismissal of this count, their motions are MOOT because they are not named as counterclaim defendants in the count.  To be clear, there is no FDCPA claim alleged with respect to either Freddie Mac or UGC.

    [7] This appears to be a reference to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., rather than the Fair Debt Collection Practices Act, but the Anchrums have not alleged any

do they describe any facts consistent with any potential claim under the FDCPA. They do not allege any telephone calls or harassing communications or threats other than notices of foreclosure of the mortgage. The counterclaim simply fails utterly to meet the pleading standard of Twombly/Ibgal to show *facts* making out a plausible claim.

But even if the facts were sufficiently alleged, Wells Fargo was a creditor of the Anchrums, not a "debt collector" as the term is defined in the Act. Judge Albritton in the Middle District of Alabama best summarized the law on this point:

> "In order to prevail on an FDCPA claim, a plaintiff must prove that: '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" Kaplan v. Assetcare, Inc., 88 F.Supp.2d 1355, 1360–61 (S.D.Fla. 2000) (internal citations omitted). The FDCPA limits its consumer protections to only those acts done by "debt collectors" as defined by the FDCPA. 15 U.S.C. § 1692 et seq.
>
> The FDCPA defines a "debt collector" as:
>
>> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.... [Debt collector] includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.
>
> 15 U.S.C. § 1692a(6). Accordingly, the FDCPA's proscriptions target the behavior of businesses whose "principal purpose" is to collect debts owed to another.

---

facts sufficient under Twombly/Iqbal to show a plausible claim. They have alleged no facts concerning how, when, or what Wells Fargo is purported to have reported to a credit reporting agency, or how that information was inaccurate. To the extent, therefore, that the court is required to read Count Seven as attempting to allege a claim under the FCRA, rather than the FDCPA, it still is due to be dismissed for failure to state a claim.

> Furthermore, within the definition of "debt collector," the FDCPA explicitly states certain persons who will not be considered "debt collectors" including:
>
>> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due **another** to the extent such activity ... (ii) **concerns a debt which was originated by such person** [or] (iii) concerns a debt which was **not in default at the time it was obtained by such person** ... (Emphasis added).
>
> 15 U.S.C. § 1692a(6)(F).  Therefore, the statute explicitly states that those entities which originated the original debt or which obtained the loan before it was in default are exempt from the statutory definition of "debt collector."
>
> In addition to defining "debt collector," the statute clearly defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).  Combining the two definitions, it is clear that a "debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."  Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir.1985).

Janke v. Wells Fargo & Co., 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011) (emphasis in original).

It is apparent in this case that Wells Fargo was not and is not a "debt collector" with respect to the Anchrums.  Not only in their counterclaim, but also in their response to the motion to dismiss, they acknowledge that Wells Fargo originated their debt as part of the financing of the purchase of their home.  As such Wells Fargo is a "creditor" excluded from the definition of a "debt collector."  They do not allege that Wells Fargo posed as some other person or entity in attempting to collect the mortgage debt.  The FDCPA simply does not apply to Wells Fargo under the circumstances of this case.  Count Seven of the counterclaim is due to be dismissed.

CONCLUSION

Based on the foregoing considerations, the magistrate judge RECOMMENDS that the motion to dismiss Counts Three and Five of the counterclaim be GRANTED as to all counterclaim defendants, and those counts should be DISMISSED WITH PREJUDICE. Further, it is RECOMMENDED that the motion be GRANTED as to Count Seven as alleged against Wells Fargo, and that count be DISMISSED WITH PREJUDICE. The motion to dismiss Count Seven with respect to Freddie Mac and UGC is MOOT in that Count Seven is not pleaded against them; they are not named as counterclaim defendants in that count. It is further RECOMMNDED that the counterclaim defendants be required to file an answer to the remaining counts of the counterclaim within fourteen (14) days following the granting of the motion to dismiss.

NOTICE OF RIGHT TO OBJECT

Any party who objects to this Report and Recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.** Failure to do so will bar any later challenge or review of the factual findings **or legal conclusions** of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S. Ct. 899, 88 L. Ed. 2d 933 (1986); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982)(*en banc*). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the

proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendation made by the magistrate judge.  The district judge, however, need conduct a hearing only in his or her discretion or if required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

DATED this 10th  day of April, 2015.

                                                     T. MICHAEL PUTNAM
                                                     UNITED STATES MAGISTRATE JUDGE