# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **FEDERAL HOME LOAN** | ) | |
| **MORTGAGE CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CV-2:14-cv-02129** |
| | ) | |
| **NORMAN D. ANCHRUM JR. and** | ) | |
| **ANDREA ANCHRUM,** | ) | |
| | ) | |
| **Defendants/Counterclaim** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **WELLS FARGO BANK, NA,** *et al.* | ) | |
| | ) | |
| **Counterclaim Defendants.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

D. Keith Andress
Catherine C. Long
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
420 20th Street North
Wells Fargo Tower, Suite 1400
Birmingham, Alabama 35203
Telephone (205) 328-0480
Facsimile (205) 322-8007
kandress@bakerdonelson.com
clong@bakerdonelson.com

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................1

II. STATEMENT OF FACTS ........................................................................2

II. ARGUMENT .........................................................................................6

    A.   FREDDIE MAC HAS ESTABLISHED A PRIMA
         FACIE CASE FOR EJECTMENT ........................................................6

    B.   THE ANCHRUMS HAVE FORFEITED THEIR
         RIGHT TO REDEMPTION ................................................................8

    C.   FREDDIE MAC IS ENTITLED TO ATTORNEYS' FEES ...............9

    D.   THE ANCHRUMS' COUNTERCLAIM FAILS ...............................9

         1.   The Anchrums' Breach of Contract claim
              is meritless ...................................................................9

              a.   Andrea Anchrum is not a party to a
                    contractual agreement with Wells Fargo or
                    Freddie Mac ................................................10

              b.   Wells Fargo is not a party to a
                    contractual agreement with the Anchrums ....................11

              c.   Freddie Mac provided the pre-acceleration
                    notice required by the Mortgage ....................12

         2.   The Anchrums' wrongful foreclosure claim fails
               because they cannot demonstrate that the foreclosure
               sale occurred for reasons other than to secure the debt
               owed to Freddie Mac ...............................................14

         3.   The Anchrums' inability to prove malice or special
               damages defeats their slander-of-title claim as a matter
               of law ......................................................................16

         6.   Wilson's Failure to Tender Precludes the Requested
               Equitable Relief .......................................................19

III. CONCLUSION ....................................................................................21

CERTIFICATE OF SERVICE ...................................................................22

# I.     INTRODUCTION

This case arose following the November 2011 foreclosure sale of real property located in Shelby County, Alabama. On the same day that the foreclosure sale occurred, the Anchrums filed a Chapter 13 petition for bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama. The Anchrums also filed an Adversary Proceeding in the Bankruptcy Court that challenged the validity of the foreclosure sale and the servicing of the subject loan. The Anchrums' bankruptcy case was dismissed prior to confirmation in July 2014, and the adversary proceeding was dismissed shortly after. This action was filed by Freddie Mac in August 2014 – nearly three years after the foreclosure sale – and was removed to this Court in November 2014 after the Anchrums' Counterclaim was filed.

The Anchrums' claims stem from the servicing of the loan prior to the foreclosure sale. They assert that the pre-acceleration notice of default required by paragraph 22 of the mortgage was sent to an incorrect address in Maylene, Alabama, rather than the address in the promissory note in Alabaster, Alabama, and that it provided less than 30 days' notice. To bolster this argument, Norman Anchrum repeatedly testified during his deposition that he did not live in Maylene, Alabama, was unsure of where Maylene was located, and had never told Wells Fargo that the mailing address should reflect Maylene rather than Alabaster.

During at least two recorded telephone conversations with Wells Fargo in May and June 2011, however, Anchrum confirmed that his mailing address was in Maylene – not Alabaster. The default notice required by the mortgage also provided the 30 days' notice and opportunity to cure mandated by the terms of the mortgage. The absence of any evidence that the terms of the mortgage were not followed or that other defects in the foreclosure process occurred defeats the Anchrums' claims as a matter of law.

## II.     STATEMENT OF FACTS

1.      Norman D. Anchrum executed a promissory note (the "Note") in favor of Wells Fargo Home Mortgage, Inc. on September 5, 2003, that was secured by a mortgage (the "Mortgage," and together with the Note, the "Loan") for real property located at 552 North Grande View Trail in Alabaster, Alabama 35007 (the "Property"). (*See Declaration of Kimberly Mueggenberg*, attached as **Exhibit 1**, at Ex. A.) Andrea Anchrum executed the Mortgage as Norman Anchrum's spouse, and is not a borrower under the terms of the Note and Mortgage. (*See id.*)

2.      The Loan was subsequently transferred and assigned to Freddie Mac. (Mueggenberg Dec. ¶ 4.) Wells Fargo continued as the servicer of the Loan and the document custodian for Freddie Mac. (*Id.*) Wells Fargo has maintained possession of the original Note and Mortgage at all times following the origination of the Loan in 2003. (*Id.*)

3.      On March 30, 2005, Wells Fargo received a returned monthly statement on the Loan due to an incorrect mailing address. (*Id.* at ¶ 5, Ex. B.) Wells Fargo corrected the issue with the mailing address for the Loan on May 13, 2005, which was altered to reflect 552 North Grande View Trail Maylene, Alabama 35114. (*Id.*)

4.      The Anchrums subsequently failed to make the required payments on the Loan. (*Id.* at Ex. C.)

5.      Wells Fargo mailed the Anchrums a letter on April 17, 2011, that notified them of the default status of the Loan. (*Id.* at ¶ 7, Ex. D.) Wells Fargo's business records confirm that the letter was mailed on April 17, 2011. (*Id.* at Ex. E.)

6.      During recorded telephone conversations with Norman Anchrum on May 13, 2011, and June 20, 2011, borrower Norman Anchrum verified his mailing address was 552 North Grande View Trail Maylene, Alabama 35114. (*See Declaration of Philip Cargioli*, attached as **Exhibit 2**, at ¶ 4, Ex. A.)

7.      Wells Fargo mailed the Anchrums a letter on August 14, 2011, that again notified them of the default status of the Loan. (Mueggenberg Dec. ¶ 9, Ex. F.) Wells Fargo's business records confirm that the letter was mailed on August 14, 2011. (*Id.* at Ex. G.) The letter provided that the Anchrums must cure the

default on or before September 13, 2011, or 30 days from August 14, 2011, to prevent the acceleration of the remaining amount of the debt. (*Id.* at Ex. F.)

8.     The Anchrums failed to cure the default on the Loan. (*Id.* at Ex. C.) Thus, foreclosure proceedings commenced.

9.     In connection with the foreclosure of the Property, Wells Fargo requested a Broker Price Opinion ("BPO") be performed to determine the fair market value of the Property in October 2011. The BPO estimated the fair market value of the Property to be $288,000. (*Id.* at ¶ 11.)

10.     Although the Anchrums and Wells Fargo discussed loss mitigation options for the Loan, a modification of the Loan was not approved. (*Id.* at ¶ 12, Ex. H.) Norman Anchrum testified that Wells Fargo never told him that he was approved for a loan modification. (*See Deposition of Norman Anchrum*, attached as **Exhibit 3**, at 57:17-22.)

11.     Sirote & Permutt, P.C., notified the Anchrums that the Loan had been accelerated by letter dated October 27, 2011. (*See Declaration of Ginny Rutledge*, attached as **Exhibit 4**, at Ex. A.) The acceleration letter was mailed to both the Property address in Alabaster, and the mailing address in Maylene. (*Id.*) The acceleration letter notified the Anchrums that a foreclosure sale date of November 29, 2011 had been set. (*Id.*)

12.     Notices of the foreclosure sale were published in *The Shelby County Reporter*, a newspaper of general circulation in Shelby County, Alabama, on November 2, 2011, November 9, 2011 and November 16, 2011. (Rutledge Dec. ¶ 5; *See also Publication Affidavit*, attached as **Exhibit 5**.)

13.     The Anchrums were notified that their request for loss mitigation assistance had been denied by letter dated November 28, 2011. (Mueggenberg Dec. Ex. I.)

14.     The foreclosure sale of the Property occurred on November 29, 2011. Freddie Mac purchased the Property at the sale for the total amount of $208,901.41, and is the holder of a valid foreclosure deed recorded in the Office of the Judge of Probate for Shelby County, Alabama, on December 8, 2011. (*Id.* at Ex. J.)

15.     Counsel for Freddie Mac sent the Anchrums a demand for possession of the Property on November 30, 2011. (Rutledge Dec. Ex. 3.) Although the Anchrums have not lived in the Property since that time, their belongings remain in the Property and they have not entirely relinquished possession to Freddie Mac. (Norman Anchrum Dep. 60:23-62:25.) The Anchrums have never listed the Property for sale. (*Id.* at 68:18-20.)

16.     Freddie Mac filed its Complaint against the Anchrums on August 7, 2014, in the Circuit Court of Shelby County. The Anchrums filed their

Counterclaim against Freddie Mac, Wells Fargo, and United Guaranty Residential Insurance Company ("United Guaranty") on September 21, 2014. United Guaranty was subsequently dismissed from this action. The case was removed to this Court in November 2014.

17. Within their Counterclaim, the Anchrums assert a variety of common law claims against Counterclaim Defendants related to the servicing of the Loan. (*See* g*enerally*, Counterclaim.)

18. Only Freddie Mac's request for possession of the Property and attorneys' fees, and the Anchrums' claims for breach of contract, wrongful foreclosure, and slander of title remain pending.

### III. <u>ARGUMENT</u>

### A. <u>FREDDIE MAC HAS ESTABLISHED A PRIMA FACIE CASE FOR EJECTMENT</u>

Pursuant to *Alabama Code* Sections 6-6-280 *et seq.*, Freddie Mac is entitled to the immediate possession of the Property. Providing evidence of a mortgage and subsequent foreclosure deed together with a proof of refusal to deliver possession by the mortgagor is sufficient to establish all of the elements of ejectment. *See Steele v. Fed. Nat'l Mortgage Ass'n*, 69 So. 3d 89 (Ala. 2011) (holding that demand for possession is not required for an ejectment action under § 6-6-280; rather, plaintiff need only show that it holds legal title and that defendant is unlawfully withholding possession of property); *see Ala. Code* § 6-6-280(b); *see*

*also Woodland Grove Baptist Church v. Woodland Grove Cmty. Cemetery Ass'n*, 947 So. 2d 1031, 1041 n.10 (Ala. 2006) ("Legal title" is defined as "[a] title that evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest") (internal quotations omitted).

As detailed herein, Norman Anchrum executed the Note and Mortgage with Wells Fargo on September 5, 2003. (Mueggenberg Dec. Ex. 1.) The Note and Mortgage were subsequently transferred and assigned to Freddie Mac, with Wells Fargo remaining as the servicer of the Loan. Wells Fargo has maintained possession of the original Note, endorsed in its favor, since the origination of the Loan in 2003. (*Id.* at ¶ 4.) Accordingly, as the holder of the Note, Wells Fargo was entitled to exercise the power of sale provided by Mortgage. *Coleman v. BAC Servicing*, 104 So. 3d 195, 199 (Ala. Civ. App. 2012) ("Where a power to sell lands is given in any mortgage, the power is part of the security and may be executed by any person, or the personal representative of any person who, by assignment or otherwise, becomes entitled to the money thus secured.") (*citing Ala. Code* 1975 § 35-10-12 and *Harton v. Little*, 57 So. 851, 851 (Ala. 1911)); *Thomas v. Wells Fargo Bank, N.A.*, 116 So. 3d 226 (Ala. Civ. App. 2012).

Attorneys for Wells Fargo notified the Anchrums that the Loan had been accelerated in October 2011, following the Anchrums' failure to cure the default on the Loan. (Rutledge Dec. Ex. B.) The required publications of the sale date

occurred on November 2, 9, and 16, 2011. (*See* Ex. 5.) Freddie Mac purchased the Property at the foreclosure sale on November 29, 2011, and is the holder of a valid foreclosure deed. (Mueggenberg Dec. Ex. J.) The Anchrums have failed to deliver possession of the Property to Freddie Mac following the foreclosure sale, despite Freddie Mac's demand that they do so. (Norman Anchrum Dep. 60:23-62:25.)

Therefore, because Freddie Mac has established a prima facie case entitling it to the immediate possession of the Property and the Anchrums cannot present substantial evidence to the contrary, Freddie Mac is entitled to judgment as a matter of law.

## B. THE ANCHRUMS HAVE FORFEITED THEIR RIGHT OF REDEMPTION

*Alabama Code* Section 6-5-251(a) provides a statutory right of redemption post-foreclosure, explaining that "[t]he possession of the land must be delivered to the purchaser or purchaser's transferees by the debtor or mortgagor if in their possession or in the possession of anyone holding under them by privity of title, within ten days after written demand for the possession has been made by, or on behalf of, the purchasers or purchaser's transferees." *Ala. Code* § 6-5-251(a). Section 6-5-251(c) further provides that the "[f]ailure of the debtor or mortgagor or anyone holding possession under him or her to comply with the provisions of this section forfeits the right of redemption of the debtor or one holding possession

under the debtor." *Ala. Code* § 6-5-251(c); *Richardson v. Stanford Props., LLC*, 897 So. 2d 1052, 1055-56 (Ala. 2004).

The Anchrums failed to deliver to Freddie Mac possession of the Property within ten days after written demand for possession was made. (Rutledge Dec. Ex. 3.) Personal items owned by the Anchrums remain in the Property, and they still have access. This failure to relinquish possession has resulted in the forfeiture of the Anchrums' right of redemption.

## C.    FREDDIE MAC IS ENTITLED TO ATTORNEYS' FEES

The terms of the Note provide that Freddie Mac is entitled to expenses incurred in enforcing the terms of the Note following the Anchrums' default, to include attorneys' fees. (*See* Mueggenberg Dec. Ex. 1.) Freddie Mac respectfully requests the Court allow its counsel to provide evidence demonstrating the total amount of attorneys' fees incurred in bringing this action and defending against the Anchrums' Counterclaim should the Court find in Freddie Mac's favor.

## D.    THE ANCHRUMS' COUNTERCLAIM FAILS

### 1.    The Anchrums' Breach of Contract claim is meritless.

Count One of the Anchrums' Counterclaim asserted a breach of contract claim against Wells Fargo and Freddie Mac based on the allegation that the pre-acceleration notice of default required by the Mortgage was not satisfied. (Counterclaim ¶ 32.) The Anchrums' breach of contract claim fails for several

reasons: 1) Andrea Anchrum is not a party to any contract with Wells Fargo or Freddie Mac; 2) Wells Fargo is not a party to a contract with Norman Anchrum; and 3) the pre-acceleration notice required by the Mortgage was provided to the Anchrums. As a result, the breach of contract claim fails as a matter of law.

### a. *Andrea Anchrum is not a party to a contractual agreement Wells Fargo or Freddie Mac.*

The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages. *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002). Andrea Anchrum cannot prove the first required element in support of her breach of contract claim: the existence of a valid contract with Wells Fargo or Freddie Mac. Andrea Anchrum did not execute the Note and is listed only as a "co-signer" of the Mortgage due to her status as Norman Anchrum's spouse. (*See* Mueggenberg Dec. Ex. 1.) In *Blake v. Bank of Am., N.A.,* 845 F. Supp. 2d 1206, 1210–11 (M.D. Ala. 2012), the Middle District of Alabama explained that "[i]t is well-settled law that 'one not a party to, or in privity with a contract, cannot sue for its breach.'" 845 F. Supp. 2d at 1212 (quoting *Dunning v. New England Life Ins. Co*., 890 So. 2d 92, 97 (Ala. 2003)). In other words, "a third person has no rights under a contract between others." *Russell v. Birmingham Oxygen Serv., Inc*., 408 So. 2d 90, 93 (Ala. 1981). This means that a third-party generally lacks standing to sue based on a breach of the contracting

parties' agreement. *Blake*, 845 F. Supp. 2d at 1212. Accordingly, Andrea Anchrum lacks standing to sue Wells Fargo or Freddie Mac based on an alleged breach of the Note as a non-party to the contract.[1]

### b. *Wells Fargo is not a party to a contractual agreement with the Anchrums.*

Similarly, the Anchrums cannot establish the existence of a valid contract with Wells Fargo. While the Mortgage provides direction regarding the parties' rights and obligations with respect to the Property, Wells Fargo is not a party to the agreement and is only the servicer of the Loan. (Mueggenberg Dec. ¶ 4.) Because Norman Anchrum's agreement was with Freddie Mac prior to the foreclosure sale (the "Lender" under the terms of the Mortgage), he cannot establish the existence of a contract with Wells Fargo and his breach of contract claim fails. *See Webb v. Ocwen Loan Serv., LLC*, 2012 WL 5906729, at *8 (S.D. Ala. Nov. 26, 2012)

---

[1] Nor can Andrea Anchrum establish that she is an intended beneficiary to the Note, which precludes any attempt by her to enforce its terms. *See Russell v. Birmingham Oxygen Serv., Inc.*, 408 So. 2d 90, 93 (Ala. 1981) (third parties have no rights under a contract between others, but may sue for breach only when "the contracting parties intend[ed] that the third person receive a direct benefit enforceable in court."); *Custer v. Homeside Lending*, 858 So. 2d 233, 248 (Ala. 2003) (requiring third-party beneficiary to show contracting parties intended to bestow direct benefit on her at time contract entered into). To determine whether a party is an intended beneficiary under a contract, "the crucial inquiry involves a determination of intent, and third parties may sue on the contract only if it may be said to have been intended for their direct, as opposed to incidental, benefit." *Ross v. Imperial Constr. Co.*, 572 F.2d 518, 520 (5th Cir. 1978) (applying Alabama law). To recover as a third party beneficiary, Andrea Anchrum must show that: (1) the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon her; (2) she was the intended beneficiary of the contract; and (3) the contract was breached. *See, e.g., Ex parte ReLife, Inc.*, 679 So. 2d 664, 668 (Ala. 1996). She cannot establish any of these required elements. There is no evidence that Wells Fargo and Norman Anchrum intended to bestow a direct benefit upon Andrea Anchrum via their execution of the Note and Mortgage.

(dismissing a breach-of-contract claim where the plaintiff could not establish the existence of a contract with the loan servicer).

**c.** ***Freddie Mac provided the pre-acceleration notice of default required by the Mortgage.***

Norman Anchrum's breach of contract against Freddie Mac also fails. Anchrum's claim is entirely based on the allegation that the August 14, 2011 notice of default was sent to an incorrect mailing address for the Property and provided less than the 30 days' notice and opportunity to cure required by the Mortgage. However, the notice of default was mailed to the specified notice address as provided by the Mortgage – 552 North Grande View Trail Maylene, Alabama, 35114. (*See* Mueggenberg Dec. Ex. F.) This is the address provided by Norman Anchrum in 2005, after Wells Fargo received returned mail addressed to the Property address reflected on the Mortgage. (*Id.* at ¶ 5, Ex. B.) This is also the correct mailing address address that Norman Anchrum provided to Wells Fargo twice during recorded telephone conversations in May and June, shortly prior to when the default letter was sent in August. (*See* Cargioli Dec. ¶ 4, Ex. A.) Wells Fargo's business records further confirm that the letter was mailed on August 14, 2011 – and thus provided the 30 days' notice required by paragraph 22 of the Mortgage. Without any evidence that the required notice was not provided, Anchrum's breach of contract claim fails.

The Alabama Court of Civil Appeals recently rejected a borrower's challenge to the pre-acceleration notice required by paragraph 22 of a mortgage in *Turner v. Wells Fargo Bank, N.A.*, No. 2150320, 2016 WL 5571636 (Ala. Civ. App. Sept. 30, 2016). The *Turner* Court observed:

> The Turners contend that Wells Fargo failed to give the Turners proper notice of foreclosure that is required pursuant to Section 22 of the mortgage, which states, in part, that such notice shall "inform the Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." The Turners contend that the November 30, 2011, notice of intent to accelerate sent by Carrington failed to include this explicit language. They contend that, because they did not receive proper notice required by the mortgage, Wells Fargo was precluded from foreclosing on the property and that the foreclosure sale is void.

> The November 30, 2011, notice stated, in pertinent part, that "[y]ou have the right to reinstate your loan after legal action has begun. You also have the right to assert in foreclosure, the non-existence of a default or any other defense to acceleration and foreclosure."

> "Substantial performance of a contract does not contemplate exact performance of every detail but performance of all important parts." *Mac Pon Co. v. Vinsant Painting & Decorating Co*., 423 So. 2d 216, 218 (Ala. 1982). The November 30, 2011, notice substantially complied with the notice requirement of Section 22, and, therefore, Wells Fargo, through Carrington, substantially complied with the requirements of that section of the mortgage by sending the notice that included the aforementioned language. Therefore, there was no genuine issue of material fact before the trial court to support the Turners' claim that the notice was defective.

*Id.* at *6-7.

Here, Freddie Mac – at a minimum – substantially complied with the

requirements of paragraph 22 of the mortgage by sending the required notice to the mailing address provided by the Anchrums. Thus, Norman Anchrum's breach of contract fails as a matter of law.

### 2. The Anchrums' wrongful foreclosure claim fails because they cannot demonstrate that the foreclosure sale occurred for reasons other than to secure the debt owed to Freddie Mac.

The Anchrums next alleged that Wells Fargo foreclosed for "substantially less" that the value of the Property, failed to comply with the requirements of paragraph 22 of the Mortgage, and that the price paid at the foreclosure sale "shocks the conscience." (Counterclaim ¶¶ 36-44.) The Anchrums' wrongful foreclosure claim fails because they cannot establish that the foreclosure of the Property occurred for any other reason than to secure the debt owed, and the price paid at the sale was approximately 73% of the estimated fair market value of the Property at the time of the sale. Thus, the Anchrums' wrongful foreclosure claim fails.

Under Alabama law, "a mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Johnson v. Shirley*, 539 So. 2d 165, 168 (Ala. 1989); *Paint Rock Prop. v. Shewmake*, 393 So. 2d 982, 984 (Ala. 1981). As explained by the Alabama Supreme Court in *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168 (Ala. 2012):

Alabama has long recognized a cause of action for "wrongful foreclosure" arising out of the exercise of a power-of-sale provision in a mortgage. However, it has defined such a claim as one where "a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." [ ] Generally the purpose for which the power of sale is given being to afford an additional and more speedy remedy for the recovery of the debt, the mortgagor is by the contract bound to exercise necessary promptness in fulfilling it and cannot complain of a legitimate exercise of the power. If in any case it is attempted to pervert the power from its legitimate purpose and to use it for the purpose of oppressing the debtor or of enabling the creditor to acquire the property himself, a court of equity will enjoin a sale or will set it aside if made.

*Id.* at 171 (internal citations omitted).

Anchrum cannot present any evidence that the foreclosure occurred for any other reason than to secure the recovery of the debt to Freddie Mac. The undisputed evidence shows that the Loan was in default at the time of the foreclosure sale. (*See* Mueggenberg Dec. Ex. C.) Freddie Mac purchased the Property at the sale for $208,901.41 – 73 % of the estimated fair market value of the Property ($288,000) at the time of the sale.[2] This falls within the acceptable range under Alabama law, and is far from "shockingly low" as alleged within the

---

[2] Indeed, the mere inadequacy of the purchase price at a foreclosure sale is insufficient to set a sale aside without further evidence of misconduct in completing the sale. *See Hayden v. Smith*, 113 So. 293, 295 (Ala. 1927)); *In re Sharpe,* 391 B.R. 117, 155 (Bankr. N.D. Ala. 2008) (stating that "although mere inadequacy of price is not sufficient to [set a sale aside], it is always a circumstance to be considered in connection with other grounds of objection to the sale, and will be sufficient to justify setting the sale aside, when coupled with any other circumstances showing unfairness, misconduct, fraud, or even stupid management, resulting in the sacrifice of the property.").

Anchrums' Counterclaim.[3]

In the absence of any evidence that Wells Fargo harbored an ulterior motive in completing the foreclosure sale, or that other unfairness, misconduct, fraud, or mismanagement occurred, the Anchrums' wrongful foreclosure claim fails. *See Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. & Loan Ass'n*, 607 So. 2d 180, 182 (Ala. 1992) (affirming summary judgment dismissal of wrongful foreclosure claim where borrower failed to rebut creditor's prima facie case establishing that foreclosure occurred to secure the debt owed by borrower); *see also Watkins v. Regions Mortg. Inc.*, 555 F. App'x 922 (11th Cir. 2014) (affirming district court's dismissal of a wrongful foreclosure claim where the borrower was in default at the time of sale and failed to establish that foreclosure occurred for an improper purpose).

### 3.      The Anchrums' inability to prove malice or special damages defeats their slander-of-title claim as a matter of law.

Finally, the Anchrums' slander-of-title claim, based on the allegation that

---

[3] *See CS Assets, LLC v. W. Beach, LLC,* 370 F. App'x 45, 46 (11th Cir. 2010) (finding price did not shock the conscience of the court and upholding sale where purchase price was 20%, 30%, or 66% of the market value of the property, depending on the appraisal used, explaining that "the choice of percentage is not as determinative in the end as the observation that no misconduct tainted the auction."); *Cottrell v. U.S.*, 213 B.R. 33 (M.D. Ala. 1997) (rejecting challenge to price paid at foreclosure sale where property was purchased for 15 % less than appraised value; reduction in purchase price reflected fair representation of the effect of forced sales on the value of the property); *RRE Crestwood Holdings, LLC v. CV Apartments, LLC*, No. 2:11-cv-01466-AKK (N.D. Ala. July 26, 2012) (holding that absent any misconduct in the bid process, a bid price of 66% of fair market value was not so low as to shock the court's conscience); *Vision Bank v. Lanza*, No. 10-00628-KD-M, 2011 WL 5190847 (S.D. Ala. Nov. 1, 2011) (finding bid price that totaled 75% of fair value of the property was not shockingly inadequate).

the "filing of a foreclosure deed" caused a cloud in title to the Property, is meritless. (Counterclaim ¶¶ 54-57.) Under Alabama law, the elements of a slander-of-title action are:

> (1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

*Merchants Nat'l Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981). Moreover, "[t]he act against which a slander-of-title action is taken must have been false and malicious when it was performed." *Folmar v. Empire Fire & Marine Ins. Co.*, 856 So. 2d 807, 809 (Ala. 2003). Yet, "[m]alice does not equate with negligence." *Ala. Power Co. v. Laney*, 428 So. 2d 21 (Ala. 1983). Malice requires "proof that [the defendant] intentionally disparaged [the] plaintiff's title to the property slandered or recklessly disparaged [it] without information sufficient to support a bona fide belief in the veracity of the disparaging statement." *Harrison v. Mitchell*, 391 So. 2d 1038, 1041 (Ala. Civ. App. 1980). In other words, "if the defendant had probable cause for believing the statement, there can in law be no malice." *Steiner*, 404 So. 2d at 21.

First, Freddie Mac – not Wells Fargo – recorded the foreclosure deed following the foreclosure sale of the Property. Thus, the Anchrums cannot prove that Wells Fargo completed a publication in disparagement of the title to the

Property, and their slander of title claim should be dismissed. The Anchrums'
claim against Freddie Mac also fails because they cannot establish that Freddie
Mac acted with malice in recording the foreclosure deed and they have no evidence
of special damages.

As demonstrated herein, required payments on the Loan had not been made
at the time of foreclosure. (*See* Mueggenberg Dec. Ex. C.) Wells Fargo was the
holder of the Note and mortgagee of record, and was therefore entitled to exercise
the power of sale according to Alabama law. Consequently, the Anchrums cannot
present any evidence that Freddie Mac acted maliciously by recording the
foreclosure deed following its purchase of the Property at a valid foreclosure sale.[4]

Nor can the Anchrums present any evidence of special damages. *See
Ebersole v. Fields*, 62 So. 73 (Ala. 1913) (noting that special damages may be
demonstrated by proof that defendant's disparagement of plaintiff's title to the
slandered realty "interrupted, or injuriously affected, some dealing of the plaintiff
with his property"). The Anchrums have failed to relinquish possession of the
Property and have never listed the Property for sale. (Norman Anchrum Dep.

---

[4] *See Folmar v. Empire Fire & Marine Ins. Co.*, 856 So. 2d 807, 809-11 (Ala. 2003) (affirming
summary judgment for the defendant where it was undisputed that the defendant did not file a
false statement with malice); *Sisson v. J.F. Day & Co., Inc.*, 619 So. 2d 1339, 1341 (Ala. 1993)
(upholding the trial court's ruling for the defendant on a slander-of-title claim where the
evidence showed that the defendant filed a lien and action to perfect the lien "as a bona fide
action on a colorable claim to [the plaintiff's] property."); *Dabbs v. Four Tees, Inc.*, 36 So. 3d
542, 558-59 (Ala. Civ. App. 2008) (upholding the trial court's judgment for the defendants
where they did not act with malice in filing the lien).

68:18-20.) They have no evidence that the recorded foreclosure deed has impacted their dealings with the Property in any way. Thus, the Anchrums' inability to prove the required elements in support of their claim entitles Freddie Mac to judgment as a matter of law. *Norman v. Bozeman*, 605 So. 2d 1210, 1214 (Ala. 1992) (upholding lower court's finding that plaintiff failed to prove requisite elements for slander of title claim where no evidence of malice or special damages was presented).

## 4. The Anchrums' request for declaratory relief fails.

Finally, the Anchrums' request for declaratory relief fails as a matter of law. While the Anchrums ask the Court to set the foreclosure sale aside because the pre-foreclosure notice was not provided according to the terms of the Note and Mortgage, the Anchrums lack any valid basis to contest the foreclosure sale. Moreover, Norman Anchrum has approached the Court with unclean hands. Under Alabama law, a party seeking an equitable remedy must do equity and come to the court with clean hands. In *Harton v. Little*, 65 So. 951, 952 (Ala. 1914), the Alabama Supreme Court explained that the doctrine that

> "[h]e who comes into equity must come with clean hands," is much more efficient and restrictive in its operation. It assumes that the suitor asking the aid of a court of equity has himself been guilty of conduct in violation of the fundamental conceptions of equity jurisprudence, and therefore refuses him all recognition and relief with reference to the subject-matter or transaction in question. It says that whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some relief, has violated conscience or good faith, or other

> equitable principle, in his prior conduct, then the doors of the court
> will be shut against him in limine; the court will refuse to interfere on
> his behalf, to acknowledge his right, or to award him any remedy.

*Id.* at 952. Here, Norman Anchrum has repeatedly presented false testimony to support a fabricated breach of contract claim. The Anchrums' request for a declaration that the notice required by the terms of the Mortgage was not provided should be denied on that ground alone. Nonetheless, Wells Fargo and Freddie Mac have demonstrated that the pre-acceleration notice was provided in accordance with the terms of the Mortgage, precluding the Anchrums' requested relief.

The Anchrums' request for declaratory relief should also be denied due to their failure to do equity. *See McClung v. Mortgage Electronic Registration Sys.*, 2012 WL at *3 n.4 (Alabama Supreme Court endorses the maxim that prohibits borrowers from challenging foreclosure proceedings without tendering the amount due). The Anchrums have not tendered the remaining amount owed of the Loan or even the amount necessary to cure the default on the Loan prior to acceleration, nor have they offered to do so. Without at least an offer to do equity, the Anchrums have approached the Court with unclean hands and their request for declaratory relief should to be denied. *See McCulley v. Countrywide Homes Loans, Inc*., No. 12–0359–CG–C, 2013 WL 3187995 (S. D. Ala. June 21, 2013) (dismissing claims for declaratory and injunctive relief because plaintiff was in default and had not tendered the remaining amount of the loan).

# IV.   CONCLUSION

Based on the foregoing, Freddie Mac is entitled to the immediate possession of the Property and attorneys' fees. The Anchrums' claims for breach of contract, wrongful foreclosure, and slander of title fail as a matter of law.

Respectfully submitted the 1st day of November, 2016.


/s/ Catherine C. Long
CATHERINE C. LONG

An Attorney for Federal Home Loan Mortgage Corporation and Wells Fargo Bank, N.A.


**OF COUNSEL**:

BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.
420 20th Street North
Wells Fargo Tower, Suite 1400
Birmingham, Alabama 35203
Telephone (205) 328-0480
Facsimile (205) 322-8007
clong@bakerdonelson.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2016, the foregoing has been served upon the following counsel of record via US First Class Mail, postage prepaid and properly addressed as follows:

Jerome Tucker, Esq.
Janice Pierce Groce
2015 First Avenue North
Birmingham, Alabama 35203
(205) 328-0055
jerometucker@msn.com
janpiercegroce@aol.com


/s/ Catherine C. Long
OF COUNSEL