


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>Plaintiff-Counterclaim Defendant,<br><br>vs.<br><br>NORMAN D. ANCHRUM, JR., and ANDREA ANCHRUM,<br><br>Defendants-Counterclaimants,<br><br>vs.<br><br>WELLS FARGO BANK NATIONAL ASSOCIATION;<br><br>Counterclaim Defendant. | ) | Case No. 2:14-cv-2129-TMP |

REPORT AND RECOMMENDATION

This action commenced as an ejectment action the Circuit Court of Shelby County, Alabama, following a foreclosure of a mortgage on the defendant's home. After the defendants, Norman and Andrea Anchrum, filed a counterclaim, the plaintiff, Federal Home Loan Mortgage Corporation ("Freddie Mac") removed that action to this court. It is now before the court on the motion for summary judgment filed by Freddie Mac and Wells Fargo Bank N.A. ("Wells Fargo") on November 1, 2016. The parties have not unanimously consented to the dispositive

jurisdiction of the undersigned magistrate judge; accordingly, this Report and Recommendation is entered.

## I. Procedural Background

The case removed to this court by plaintiff/counterclaim defendant Freddie Mac on October 31, 2014, on the basis of a counterclaim pleaded against it and other newly-added counterclaim defendants, including Well Fargo. Freddie Mac's original complaint alleges an ejectment action against the Anchrums, asserting that Freddie Mac bought their home at 552 North Grande View Trail, Alabaster, Alabama , at a foreclosure sale on November 29, 2011, demanding the next day that the Anchrums vacate the home. In response to the ejectment complaint, the Anchrums filed a counterclaim in which Wells Fargo (among others[1]) was added as a counterclaim defendant along with Freddie Mac. The counterclaim alleged the following claims:

[1] The counterclaim also named as defendants United Guaranty Residential Insurance Company and United Guaranty Residential Insurance Company of North Carolina. In counsel's appearance for these counterclaim defendants (Doc. 1-5), he represented that these are not separate corporations and that the designation of "United Guaranty Residential Insurance Company of North Carolina" is an erroneous reference to United Guaranty Residential Insurance Company. There is only one corporation, and its correct name is United Guaranty Residential Insurance Company.

1. *Count One—Breach of Contract*, alleging that Wells Fargo breached a contract with the Anchrums by failing "to give borrower notice as required by paragraph 22 of the counterclaimants' mortgage and paragraph 6(c) and 7 of the Note to the address as provided in the Note," cause the foreclosure to be in violation of the "mortgage instrument."

2. *Count Two—Wrongful Foreclosure*, alleging that Wells Fargo foreclosed on the property for a purpose other than to collect a debt and sold the property for substantially less than the mortgage balance and the value of the property.

3. *Count Three—Unjust Enrichment*, alleging that Wells Fargo enriched itself by accepting "payments" of fees by the Anchrums, all the while intending to foreclose on the property, and Freddie Mac enriched itself by purchasing the property at less that the fair market value.

4. *Count Four—Slander of Title*, alleging that Wells Fargo placed a cloud on the title to the property by filing a void foreclosure deed on December 8, 2011.

5. *Count Five—Breach of Covenant of Good Faith and Fair Dealings*, alleging that Wells Fargo promised the Anchrums that it was working on a loan modification, yet proceeded with the foreclosure.

6. *Count Six—Declaratory Judgment*, alleging that the court should declare the Wells Fargo failed to comply with the notice requirements of paragraphs 6(c) and 7 of the Note and paragraph 22 of the mortgage.

7. *Count Seven—Fair Debt Collection Practices Act*, alleging that the Anchrums are entitled to monetary damages due to Wells Fargo's "numerous violations of the FDCPA," 15 U.S.C. § 1692 –1692p.[2]

[2] Although Count Seven explicitly cites to the Fair Debt Collection Practices Act, paragraph 73 of the counterclaim alleges also that "Wells Fargo has reported inaccurate credit information to the three major credit reporting agencies," which seems to be an attempt to allege a claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681. Paragraph 74 also refers to "U.S. Bank," which is not a party in this action.

In response to the filing of the counterclaim, Freddie Mac removed the case from state court to this court, citing 12 U.S.C. § 1452(f) as the basis for doing so even though Freddie Mac was the original plaintiff in the action. Although the defendants/counterclaimants did not challenge the removal, the court entered an Order on December 17, 2014, for the parties to show cause why the action should not be dismissed for want to subject-matter jurisdiction. After the parties responded that subject-matter jurisdiction was grounded on the Fair Debt Collection Practices Act claim in the counterclaim, the court concluded that federal subject-matter jurisdiction notwithstanding it was Freddie Mac that removed it. (Doc. 22).[3]

These counterclaims were first reviewed on motions to dismiss filed by various counterclaim defendants, resulting in the filing of the undersigned's Report and Recommendation dated April 10, 2015, and a Supplemental Report and Recommendation on April 28, 2015. On May 22, 2015, United States District Judge Abdul Kallon adopted and accepted the undersigned's Report and Recommendation and Supplemental Report and Recommendation, dismissing all claims against United Guaranty Residential Insurance Company, and dismissing

[3] Recently, albeit admittedly in *dicta*, the United States Supreme Court recognized that 12 U.S.C. § 1452(f) provides that "Freddie Mac is a federal agency under 28 U.S.C. §§ 1345, 1442, that civil actions to which Freddie Mac is a party arise under federal law, and that Freddie Mac may remove cases to federal district court before trial" [parentheses omitted]. *Lightfoot v. Cendant Mortgage Corp*. ___ U.S. ___, 137 S. Ct. 553, 564, 196 L. Ed. 2d 493 (2017).

Counts Three, Five, and Seven as to both Wells Fargo and Freddie Mac. (Doc. 35). Thus, the only remaining claims now before the court are Counts One (breach of contract), Two (wrongful foreclosure), and Six (declaratory judgment) of the counterclaim.

Following a failed attempt to mediate the case before United States Magistrate Judge Harwell Davis, the instant motion for summary judgment was filed by Freddie Mac and Wells Fargo on November 1, 2016. (Doc. 52). The Anchrums filed their partial opposition to the motion on November 22, 2016 (Doc. 54), followed by a further response to the motion on November 29, 2016 (Doc. 60).

**II. Summary Judgment Standard of Review**

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting former Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The evidence supporting a claim of affirmative defense must be "substantial," *Marcus v. St. Paul Fire and Marine Ins. Co.*, 651 F.2d 379 (5th Cir., Unit B, 1981); a mere scintilla of evidence is not enough to create a genuine issue of fact. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004); *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1249-50 (11th Cir. 2004). If the non-movant's evidence is so thoroughly discredited by the rest of the record evidence that no *reasonable* jury could accept it, the evidence fails to establish the existence

of a genuine issue of fact requiring a jury determination. *See Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007) ("Respondent's version of the events is so utterly discredited by the record that no reasonable jury could believe him. The Court of Appeals should not have relied on such visible fiction…."); *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1290 n. 3 (11th Cir. 2009). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. Undisputed Facts for Summary Judgment

Both Wells Fargo and Freddie Mac move for summary dismissal of all of the Anchrums' remaining claims, and Freddie Mac moved further for summary judgment on its original ejectment claim against the defendants. As the Anchrums are the non-moving parties, the court has viewed the facts and all reasonable inferences favorably to them. Even so, the facts are largely undisputed.

1. On September 5, 2003, defendant Norman Anchrum signed a promissory note ("the Note") in favor of Wells Fargo Home Mortgage, Inc., in the face amount of $305,790.00. Defendant Andrea Anchrum did not sign the Note. The Note called for monthly payments of $1,784.51 for thirty years, with the Note maturing on October 1, 2033. The Note listed the "Property Address" as "552 N. Grande View Trail, Alabaster, Alabama." (Doc. 52-2).

2. Paragraph 6(C) of the Note stated the following:

> **(C) Notice of Default**
> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(Doc. 52-2, p. 24 of 26).[4]

---

[4] The document and page numbers are those assigned to filings by the court's electronic case filing system.

3. Paragraph 7 of the Note stated the following in pertinent part:

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

(Doc. 52-2, p. 24 of 26).

4. On that same date, September 5, 2003, both Norman and Andrea Anchrum executed a mortgage (‘the Mortgage”) to Wells Fargo Home Mortgage, Inc. (Doc. 52-2, p. 7 of 26). The “Property Address” listed was “552 N. Grande View Trail, Alabaster, Alabama 35007.”

5. Pertinent provisions of the Mortgage included the following:

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due. shall not be a waiver of or preclude the exercise of any right or remedy.

(Doc. 52-2, p. 16 of 26).

**15. Notices**. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(Doc. 52-2, p. 16 of 26).

**22. Acceleration; Remedies**. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any commitment or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its

> option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power or sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

(Doc. 52-2, p. 19 of 26).

6. Documents created in connection with the Anchrums' purchase of the house in 2003 listed the address of the property variously as 552 North Grande View Trail in Alabaster, Alabama, and in Maylene, Alabama. While the Note and Mortgage list the address as being in Alabaster, the warrant deed and tax notice specify the address as being in Maylene. (*See generally* Doc. 52-5, pp. 79, 93). Handwritten on a "Property Insurance Disclosure Form" dated September 5, 2003, under the heading "MAILING ADDRESS" and directly above the signature of Norman Anchrum, the address of 552 N. Grande View Trail, Maylene, AL 35114 is identified as the "correct mailing address" of the subject property. (Doc. 52-5, p. 94 of 110).

7. Soon after the closing of the loan, ownership of the Note and Mortgage was transferred to Freddie Mac, with Wells Fargo Home Mortgage, Inc., servicing the loan. (Aff. of Mueggenberg, Doc. 52-2, ¶ 4). Wells Fargo has maintained physical possession of the Note and Mortgage as part of its servicing duties. (*Id.*). Wells Fargo Home Mortgage, Inc., now has been merged into and is a division of Wells Fargo Bank, N.A. (*Id.*, at ¶ 3).

8. In March 2005, Wells Fargo received a returned monthly statement it had mailed to 552 N. Grande View Trail, Alabaster, AL 35007. Based on information not clear in the record, Wells Fargo changed the Anchrums' mailing address to 552 N. Grande View Trail, Maylene, AL 35114, on May 10, 2005. There is no indication that the Anchrums did not receive their regular monthly statements concerning the mortgage between 2005 and 2011.

9. In two recorded telephone conversations with Wells Fargo representatives six years later, on May 13 and June 20, 2011, Norman Anchrum confirmed that his mailing address was 552 North Grande View Trail, Maylene, AL 35114. (Aff. of Cargioli, Doc. 52-4, pp. 1-5).

10. From at least March 2011 through December 16, 2011, the Anchrums received their monthly bank statements from BBVA Compass Bank at "552 N. Grande View Trl, Maylene, AL 35114-6051." (*See* Doc. 52-6, pp. 59-87 of 107).

11. In 2010, the Anchrums began to experience problems making timely payments on the Note and the Mortgage. On October 17, 2010, Wells Fargo Home Mortgage mailed a letter to Norman Anchrum at the **Maylene** address (Doc. 52-5, p. 95 of 110), advising that he had to pay $4,713.63 by November 16, 2010, to cure the default in his loan payments. (Doc. 52-5, p. 95 of 110). The default was cured.

12. On April 17, 2011, Wells Fargo mailed another letter to Norman Anchrum at "552 N. Grande View TRL, Maylene, AL 35114-6051" (the exact

address used on the October 17, 2010, letter), notifying him of another default and advising that he had to pay $4,697.20 by May 17, 2011 to cure the default. (Doc. 52-2, p. 97). Anchrum denies receiving the letter, but the default was cured by payment on May 4, 2011, in the amount of $4,680.41. (Doc. 52-3, p. 11 of 107).

13. On August 14, 2011, Wells Fargo mailed another letter to Norman Anchrum at "552 N. Grande View TRL, Maylene, AL 35114-6051" (the exact address used for both the October and April letters), notifying him that his loan was in default and advising that he had to pay $4,680.41 by September 13, 2011, to cure the default. Anchrum denies receiving the letter.

14. Two days later, on August 16, 2011, Well Fargo mailed a letter to the same address in Maylene, advising the Anchrums about the availability of loan modification programs under the government's Home Affordability Modification Program ("HAMP"). (Doc. 52-5, p. 102 of 110). Follow-up letters were mailed on October 7, 2011 (Doc. 52-5, p. 105 of 110), and October 18, 2011. (Doc. 52-5, p. 107 of 110). The October 18 letter contained a form application requesting a loan modification. In a separate letter dated October 18, Wells Fargo informed the Anchrums that a "home preservation specialist" had been assigned to assist them with seeking loan modification options. (Doc. 52-6, p. 10 of 107). Anchrum does not recall receiving these letters, although he admits to filling out a loan modification application over the telephone.

15. On October 27, 2011, a representative of the law firm of Sirotte & Permutt, on behalf of Wells Fargo, mailed a letter to Norman and Andrea Anchrum at *both* the Maylene and Alabaster addresses, notifying them that they were in default under the terms of the Note and the Mortgage, and that Wells Fargo Bank, N.A., as "successor by merger to Wells Fargo Home Mortgage, Inc.," was accelerating to maturity the entire unpaid balance of the debt, plus fees, interest, and other expenses. (Doc. 52-6, p. 34 of 107). The Anchrums deny receiving this letter. The letter further advised the Anchrums that a foreclosure sale was scheduled for November 29, 2011.

16. On November 3, 2011, Well Fargo mailed another letter to Norman Anchrum at the Maylene address, advising him of loan modification programs and urging him to contact Wells Fargo to explore the options available. (Doc. 52-6, p. 13 of 107). The letter also included a packet of documents need to commence the loan modification procedures. (Doc. 52-6, pp. 18-29 of 107).

17. Notice of the foreclosure sale was published in *The Shelby County Reporter* on November 2, 9, and 16, 2011. (Doc. 52-6, p. 35 of 107). The foreclosure sale was held on November 29, 2011, and Freddie Mac was the highest bidder at $208,901.41. The estimated fair market value of the property, according to the "Broker Price Opinion" accessed by Wells Fargo was $288,000.00. The assessed value for *ad valorem* tax purposes was $129,300.00. (Doc. 60, pp. 4,8).

18. In a letter dated November 30, 2011, to Norman and Andrea Anchrum mailed to *both* "552 N. Grande View Trl, Maylene, AL 35114" and "552 N. Grande View Trail, Alabaster, AL 35007," Sirotte & Permutt made a Demand for Possession on behalf of Freddie Mac, demanding that possession of the property be delivered to Freddie Mac within ten (10) days. (Doc. 52-6, pp. 40-41 of 107). Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc., conveyed the property by foreclosure deed to Freddie Mac on December 5, 2011. (Doc. 52-6, pp. 37-39 of 107).

19. Sometime thereafter, the Anchrums moved their residence to another home, but left personal property behind at 552 N. Grande View Trail. On January 9, 2012, notice was posted at the property giving the Anchrums fifteen days to remove the rest of their personal property. (Doc. 52-6, p. 42 of 107).

**IV. Analysis**

As described above, Freddie Mac's claim for ejectment against the Anchrums in intertwined with the Anchrum's claims of breach of contract and wrongful foreclosure, on which they seek a declaratory judgment. In sum, if the foreclosure of the Mortgage by Wells Fargo is void or invalid, the deed to Freddie Mac is a nullity and it has no superior claim for possession of 552 North Grande View Trail necessary for ejectment. Freddie Mac and Wells Fargo seek summary

judgment in their favor on all claims, which would grant Freddie Mac judgment on its ejectment action against the Anchrums and dismiss the counterclaims against both Freddie Mac and Wells Fargo.

*(a) Ejectment*

In Alabama, a plaintiff may elect to sue in common-law ejectment or on a statutory cause of action under Alabama Code § 6-6-280(b) (1975). *See* Alabama Code § 6-6-280(a) (1975).[5] Freddie Mac's original complaint in state court is not clear which option it invokes, but its reference to the claim of legal title under the foreclosure deed tends to suggest that it is the statutory cause of action, which is the most frequently used remedy for disputes over possession of land.[6] Alabama Code § 6-6-280(b) states:

> (b) An action for the recovery of land or the possession thereof in the nature of an action in ejectment may be maintained without a statement of any lease or demise to the plaintiff or ouster by a casual or nominal ejector, and the complaint is sufficient if it alleges that the plaintiff was possessed of the premises or has the legal title thereto, properly designating or describing them, and that the defendant entered thereupon and unlawfully withholds and detains the same. This action must be commenced in the name of the real owner of the land or in the name of the person entitled to the possession thereof,

5 "(a) A plaintiff commencing an action for the recovery of lands or the possession thereof has an election to proceed by an action of ejectment or by an action in the nature of an action of ejectment as is provided in subsection (b) of this section." Ala. Code § 6-6-280 (1975). Alabama law recognizes both a common-law ejectment action and a statutory ejectment action. *See Ala. State Land Co. v. Matthews*, 168 Ala. 200, 53 So. 174 (1910).

6 "Actions in ejectment or actions in the nature of an action in ejectment are governed by [Ala. Code] § 6–6–280…." *Steele v. Fed. Nat. Mortg. Ass'n*, 69 So. 3d 89, 92 (Ala. 2010).

> though the plaintiff may have obtained his title thereto by a conveyance made by a grantor who was not in possession of the land at the time of the execution of the conveyance thereof. The plaintiff may recover in this action mesne profits and damages for waste or any other injury to the lands, as the plaintiff's interests in the lands entitled him to recover, to be computed up to the time of the verdict.

The statutory action for ejectment is both *in rem* and *in personam* in that it provides both for obtaining possession of land and for damages caused by the wrongful withholding of possession of the land. *See Findlay v. Hardwick*, 230 Ala. 197, 160 So. 336 (1935).[7]

To prove a claim for ejectment under Alabama law, a plaintiff must show (1) possession or legal title to the land, (2) an adequate description to identify the land in question, and (3) entry and a wrongful withholding of possession by the defendant. *See Steele v. Federal National Mortgage Ass'n*, 69 So. 3d 89, 93 (Ala. 2010); *United States v. Roberts*, No. 1:15-CV-1269-VEH, 2016 WL 7187536, at *4 (N.D. Ala. Dec. 12, 2016) ("Moreover, '[a] plaintiff who establishes that he has both legal title to the property when his complaint is filed and a right to immediate possession has established the elements for statutory ejectment.' *Fed. Home Loan Mortg. Corp. v. Wilson*, No. 2:13-CV-1744-SLB, 2015 WL 5693600, at *5 (N.D. Ala. Sept. 29, 2015) (internal quotation marks omitted) (quoting *Taylor v. Bryars*,

---

[7] The court notes that Freddie Mac's original complaint filed in the Circuit Court of Shelby County sought relief both for "possession of the aforesaid real property" and "money damages for the wrongful retention of said real property." (Doc. 1-1, p. 2 of 9).

602 So. 2d 378, 380 (Ala. 1992) (in turn quoting *Thompson v. First State Bank of Alabama*, 503 So. 2d 858, 860 (Ala. Civ. App. 1987)), *Taylor* overruled on other grounds by *Steele v. Fed. Nat. Mortg. Ass'n*, 69 So. 3d 89 (Ala. 2010)).”). Freddie Mac has made at least a *prima facie* showing of these elements. It is undisputed that a foreclosure sale occurred on November 29, 2011, and Freddie Mac was the highest and best bidder. A few days later, on December 5, 2011, Wells Fargo executed a foreclosure deed to Freddie Mac, thus establishing its legal title to the land in dispute.[8] The foreclosure deed, and the mortgage on which it was premised, clearly and adequately describes the land in dispute. Although the Anchrums testified that they moved out of the house and to another residence soon after being notified of the foreclosure, they also admit that they have kept some personal belongings at the house and that they return to it periodically to check on it. It might be argued that they are no longer wrongfully withholding possession of the premises, but they have not unequivocally surrendered possession to Freddie Mac. Freddie Mac has prudently sought legal action rather than undertake some questionable self-help to take possession.

Because Freddie Mac has established a *prima facie* case for ejectment, it is entitled to summary judgment in its favor, unless the foreclosure by Wells Fargo was invalid. The Anchrums have asserted that the foreclosure was, in fact, invalid

---

[8] This assumes, of course, the validity of the foreclosure itself, which will be discussed below in the text.

for two reasons: (1) Wells Fargo breached the contract of the Note and the Mortgage by failing to give required notices prior to the acceleration of the debt and the foreclosure, and (2) Wells Fargo committed a wrongful foreclosure. The Anchrums assert these arguments both as defenses to the foreclosure sale, as well as independent claims for relief in their counterclaim.[9]

*(b) Breach of Contract*

The Anchrums point to various notice provisions in the Note and the Mortgage in support of their allegation that Well Fargo failed to comply with the express provisions of the Note and Mortgage before foreclosing on their home. They contend this failure amounts to a breach of contract, such that the foreclosure itself was invalid and foreclosure deed to Freddie Mac is void.[10] At paragraph 8 of

---

9 The counterclaim also pleads a claim for a declaratory judgment, but it is nothing more than a request for the court to declare the foreclosure and sale void due to the alleged breach of contract and wrongful foreclosure alleged in Counts 1 and 2 of the counterclaim. In sum, the declaratory judgment count simply seeks an alternative form of relief for the substantive claims of breach of contract and wrongful foreclosure.

10 At the outset, it is unlikely that a mere breach of the notice provisions of the Mortgage is enough to void the foreclosure sale. Because this is an ejectment action—an action collateral to the foreclosure—the only defenses that can be raised are those that establish the foreclosure was void, not just voidable. *See Pittman v. Regions Bank*, ___ So. 3d___, 2016 WL 7030616, *3 (Ala. Civ. App. Dec. 2, 2016) ("[O]nly those irregularities that would render the foreclosure sale void, may be raised as affirmative defenses to an ejectment action," (quoting *Campbell v. Bank of America, N.A.*, 141 So. 3d 492, 499 (Ala. Civ. App. 2012)). The grounds that make a foreclosure void, as distinct from voidable in a direct action against the foreclosure, are (1) the entity pursuing the foreclosure does not have the legal right to exercise the power of sale, (2) the debt has been fully paid, (3) the foreclosing entity gives *no* public notice of the sale, and (4) the sale price is so low as to shock the conscience and raise a presumption of trickery, fraud, or culpable mismanagement. *Id.* at *4.

their Response to the motion for summary judgment (Doc. 60), they state the essence of their argument:

> Wells Fargo failed to give notice of the time and place of the foreclosure sale because a proper *default letter* is a condition precedent to a *notice of intent to accelerate letter*. Both letters were void due to the procedural and substantive failure to comply with the note and mortgage by servicer, Wells Fargo. The default letter and the acceleration letter were not mailed to the property address even though; [sic] Anchrum had not changed his address. Norman Anchrum testified through deposition testimony that he did not receive Wells Fargo's April 17, 2011, August 14, 2011, or the October 27, 2011 letters.

(Doc. 60, pp. 8-9) (italics added for emphasis). Thus, the Anchrums argue that Wells Fargo breached the contractual terms of the Note and the Mortgage by failing to mail a "default letter" and, later, a "notice of intent to accelerate latter" to them at their proper address in Alabaster. In particular, the Anchrums point to the notice requirements of Paragraphs 6 and 7 of the Note and Paragraphs 15 and 22 of the Mortgage. (*Id.* at p. 9).

An Alabama Supreme Court case with very similar facts is *Jackson v. Wells Fargo, N.A.*, 90 So. 3d 168 (Ala. 2012). In that case, the same mortgage language was at issue,[11] and the Alabama Supreme Court determined that it required notice

---

[11] As quoted in *Jackson*, paragraph 22 of the mortgage required the following:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument .... The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date,

of *intent* to accelerate at least 30 days before actual acceleration as a condition precedent to foreclosure and the power of sale in the mortgage. The court explained:

> The parties' confusion centers on the difference between notice of actual acceleration and notice merely of *intent to accelerate*. Similar confusion infected the litigation in *Ogden v. Gibraltar Savings Ass'n*, 640 S.W.2d 232 (Tex.1982), in which the Supreme Court of Texas explained:
>
> > "The term 'notice of acceleration' is used by the parties to express different concepts. [The debtor] refers to notice of intent to accelerate; Gibraltar refers to notice that the debt has been accelerated. Although the cases do not always clearly distinguish between the two, both types of notices are required. Notice of intent to accelerate is necessary in order to provide the debtor an opportunity to cure his default prior to harsh consequences of acceleration and foreclosure. Proper notice that the debt has been accelerated, in the absence of a contrary agreement or waiver, cuts off the debtor's right to cure his default and gives notice that the entire debt is due and payable. *See Faulk v. Futch*, 147 Tex.

---

> not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law...."

*Jackson v. Wells Fargo, N.A.*, 90 So. 3d 168, 169 (Ala. 2012). This is exactly the same language as appears in Paragraph 22 of the Mortgage at issue in this case.

> 253, 214 S.W.2d 614 (1948). Notice that the debt has been accelerated, however, is ineffective unless preceded by proper notice of intent to accelerate. *Allen Sales & Servicenter, Inc. v. Ryan*, 525 S.W.2d 863 (Tex.1975)."
>
> 640 S.W.2d at 233–34 (emphasis added).
>
> * * *
>
> Nothing prevents a party from freely engaging in a contract that would require some form of notice to the mortgagor ... as a condition precedent to the exercise of the power of sale in the mortgage. Failure to give notice where there is such a contractual obligation amounts to a failure of a condition precedent or an estoppel, thereby forming a basis for barring exercise of the power ...." (footnote omitted)). *See also Dewberry v. Bank of Standing Rock*, 227 Ala. 484, 492, 150 So. 463, 469 (1933) ("[A] sale under the power [of sale] in a mortgage or trust deed must be conducted in strict compliance with the terms of the power.")….

*Jackson v. Wells Fargo, N.A.*, 90 So. 3d 168, 172 (Ala. 2012) (italics in original). Thus, under the terms of the Mortgage, certain forms of notice, both as to an intent to accelerate and the actual acceleration, were required to be given and including notification of certain forms of information.[12]

The undisputed facts of this case, however, establish that all proper notices were given. The Anchrums do not dispute that by 2011, they were having trouble making their monthly mortgage payments. This is confirmed by the payment

[12] Paragraph 6(C) of the Note adds little to this analysis. It merely states that the Lender "may" give notice of default. If it does so, however, that notice must be at least 30 days before the actual acceleration occurs. Paragraph 22 of the Mortgage does the same thing, except in mandatory language.

records from that year (Doc. 52-3, pp. 11-13), which show that their monthly payments were due by the eleventh day of each month, but were paid by them irregularly at best. The Anchrums made no payment in January 2011, but made a two-month catch-up payment of $4,713.63 on February 11. They made no payment in March, but made a payment of $2,401.42 on April 18, which was credited against the payment due in March. They made no other payment for April, at which time Wells Fargo sent them a letter dated April 17, notifying the Anchrums that they were in default and had to pay $4,697.20 to cure the default. On May 4, they paid $4,680.41, which appears to have been credited against the mortgage installments due for April and May. On June 15, the Anchrums paid $2,295.59. They made no payment in July or August of 2011, or for the rest of 2011. In September, the balance of the escrow account went into the negative, and Wells Fargo began advancing money to make required escrow payments, ultimately in the total amount of $2,581.39.

It was in a letter dated August 14, 2011, mailed to the Maylene address, that Wells Fargo again notified the Anchrums that they were in default and advising that they had to pay $4,680.41 by September 13, 2011, to cure the default. In pertinent parts, the letter stated:

> Our records indicate that your loan is in default for failure to make payments due. Unless the payments on your loan can be brought current by September 13, 2011, it will become necessary to require

immediate payment in full (also called acceleration) of your Mortgage Note and pursue the remedies provided for in your Mortgage or Deed of Trust, which include foreclosure.

To correct the default you must pay the total delinquency against your account, which as of today's date is:

| | | |
|---|---|---|
| Past Due Payments | $ | $4,591.18 |
| Late Charge Balance | $ | $89.23 |
| Other Fees | $ | $0.00 |
| Unapplied Funds | -$ | $0.00 |
| **Total Delinquency as of August 14, 2011** | $ | **$4,680.41** |

To avoid the possibility of acceleration, you must pay this amount on or before September 13, 2011 in CERTIFIED funds, to **Wells Fargo Home Mortgage, 1200 W 7th Street, Suite L2-200, Los Angeles, CA 90017**. For the loan to be current and not in default, any additional monthly payments, late charges and other charges that may be due under the note, mortgage and applicable law after the date of this notice must also be paid.

If funds are not received by the above referenced date, we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding, which could result in Lender or another person acquiring ownership of the property. If foreclosure is initiated, you have the right to argue that you did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have.

You have the right to reinstate your Mortgage Note and Mortgage or Deed of Trust after acceleration, and to have enforcement of the Mortgage discontinued and to have the Mortgage Note and Mortgage remain fully effective as if acceleration had never been required. However, any future negotiations attempting to reinstate your loan or any payment of less than the full amount due shall not require Wells Fargo Bank, N.A.'s waiver of the acceleration unless otherwise agreed to, in writing, by Wells Fargo Bank, N.A.

(Doc. 52-3, p. 44 of 107).

Plainly this letter met all the requirements of giving notice of intent to accelerate under the terms of Paragraph 22 of the Mortgage. It described the default and what was necessary to cure it. It gave the Anchrums until September 13 (thirty days after August 14) to cure the default, and it notified them that, unless they cured the default, Wells Fargo would "proceed with acceleration." The letter told the Anchrums they had "the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." And, finally, it told them that they had the right "to reinstate your Mortgage Note and Mortgage or Deed of Trust after acceleration, and to have enforcement of the Mortgage discontinued and to have the Mortgage Note and Mortgage remain fully effective as if acceleration had never been required." It is clear, therefore, that the August 14 letter complied fully with the requirements of Paragraph 22 of the Mortgage for giving notice of intent to accelerate.

The Anchrums' argument for the insufficiency of this notice appears to be that it was mailed to 552 North Grande View Trail, Maylene, Alabama 35114, rather than 552 North Grande View Trail, Alabaster, Alabama 35007. They contend not only that they did not receive the notice, but that it was mailed to an incorrect address. Whether they actually received the letter is irrelevant. Paragraph 15 of the Mortgage required only that "Any notice to Borrower in

connection with this Security Instrument *shall be deemed to have been given to Borrower when mailed by first class mail* or when actually delivered to Borrower's notice address if sent by other means." (Italics added for emphasis). The placing of the August 14 letter into the mails constituted notice under the terms of the Mortgage, regardless of whether it was actually delivered. Notice of intent to accelerate was effective on August 14, the date it was placed in the mail.

Likewise, the Maylene mailing address was a proper notice address. The undisputed evidence shows that the Anchrums had been receiving their monthly mortgage statements at that address since at least 2005. Although the Note and the Mortgage originally gave the property address as being in Alabaster, by June of 2011 at the latest, in two recorded telephone conversations with Wells Fargo representatives, Norman Anchrum confirmed that his mailing address was Maylene, not Alabaster. (Doc. 52-4, pp. 3-5).[13] Paragraph 15 of the Mortgage

---

[13] On May 13, 2011, the following exchange occurred:

> Wells Fargo: Thanks for calling Loan servicing, my name is Rich Walls, can I have your name?
>
> Anchrum: Norman Anchrum, Rich.
>
> Wells Fargo: Alright, just a second. Alabama – ok, there's a Southern guy. And what's the full property address?
>
> Anchrum:552 North Grande View Trail Maylene, Alabama, 35114
>
> Wells Fargo: Alright, mailing address is the same?
>
> Anchrum: That's right.

specified that "[t]he notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender." The recorded conversations with Wells Fargo did so to Wells Fargo's satisfaction. The use of the Maylene address is consistent with the fact also that the Anchrums received their monthly bank statements from BBVA Compass bank at that address during 2011. Paragraph 15 of the Mortgage plainly required the Anchrums to "promptly notify Lender of Borrower's change of address," and Wells Fargo used the Maylene address as the notice address to the Anchrums for more than six years, during none of which did the Anchrums tell Wells Fargo that it was not correct. Finally, as noted, Norman Anchrum confirmed that address twice in 2011, in separate recorded telephone calls to Wells Fargo.

After the August 14 letter notified the Anchrums of Wells Fargo's intent to accelerate the balance of the Mortgage if the default was not cured (and it is

---

(Doc. 52-4, p. 3). Then, on June 20, 2011, the following exchange was recorded:

> Wells Fargo: Thank you for calling Welsl Fargo home mortgage, my name is Ebony, to whom do I have the pleasure of speaking?
>
> Anchrum: Norman Anchrum
>
> * * *
>
> Wells Fargo: Alright I did go ahead and formulate that bill to come out to you, can you verify your mailing address?
>
> Anchrum: 552 North Grande View Trail Maylene, Alabama 35114

(Doc. 52-4, p. 5)

undisputed that the default was not cured), Wells Fargo, acting through its attorneys, actually accelerated the Mortgage in a letter dated October 27, 2011, mailed to *both* the Alabaster and Maylene addresses. (Doc. 52-6, p. 34 of 107). The letter started:

> YOU ARE HEREBY NOTIFIED that you are in default of the terms of the Promissory Note and Mortgage dated the 5th day of September, 2003, to Wells Fargo Home Mortgage, Inc. By virtue of default in the terms of said Note and Mortgage, Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage, Inc., hereby accelerates to maturity the entire remaining unpaid balance of the debt, including attorney's fees, accrued interest, and other lawful charges, and the amount due and payable as of the date of this letter is $275,479.81.

The letter went on to advise the Anchrums that foreclosure proceedings were being commenced, and it included a copy of the notice of foreclosure being published in the Shelby County Register. The foreclosure sale occurred on November 29, 2011, well more than thirty days following the notice-of-acceleration letter.

Because the October 27 letter was mailed to both addresses, there is even less merit of the argument that it failed to comply with the provisions of the Note and Mortgage concerning acceleration of the debt and notification of the Anchrums. Whatever argument they have concerning an error in the mailing address, this was mailed to *both* addresses.

There is no factual basis for finding that Wells Fargo breached the terms of the Note or Mortgage. The August letter complied with the requirement to give

notice of intent to accelerate, and the October letter complied with the requirements for accelerating the debt more than thirty days prior to the foreclosure sale. Wells Fargo's motion for summary judgment as to the Anchrums' counterclaim for breach of contract is due to be granted.

*(c) Wrongful Foreclosure*

The only other counterclaim advanced by the Anchrums is that the foreclosure was wrongful because they did not receive the notices to which they were entitled under the terms of the Mortgage.[14] This claim is meritless for many of the same reasons explored above—they did receive the notices required by the Mortgage, regardless of confusion about their address. Moreover, even if Wells Fargo failed to meet the strict terms of the Mortgage notice requirements, that alone does not support a claim for wrongful foreclosure.

Alabama law recognizes a tort claim for wrongful foreclosure, but not every erroneous or defective foreclosure[15] is actionable.

> "Alabama law is crystal clear that a wrongful foreclosure action lies only where the power of sale is exercised for an improper purpose". *Selman v. CitiMortgage, Inc.*, 2013 U.S. Dist. LEXIS 37017, 2013

---

[14] The court notes that this claim was previously asserted by the Anchrums in an adversarial proceeding as part of their bankruptcy, but was dismissed for failure to state a claim. *See In re Anchrum*, 2013 WL 5352631, *4 (Bankr. N.D. Ala, Sept. 23, 2013). Neither Freddie Mac nor Wells Fargo has asserted that the claim is now precluded by collateral estoppel or claim preclusion.

[15] For the reasons already discussed, the foreclosure in the instant case was proper and not erroneous or defective.

WL 838193 (S.D.Ala. March 5, 2013) (citing *Jackson v. Wells Fargo Bank, N.A.*, 90 So.3d 168, 171 (Ala.2012)). In *Jackson*, the Alabama Supreme Court observed that:

> "Generally the purpose for which the power of sale is given being to afford an additional and more speedy remedy for the recovery of the debt, the mortgagor is by the contract bound to exercise necessary promptness in fulfilling it and cannot complain of a legitimate exercise of the power. If in any case it is attempted to pervert the power from its legitimate purpose and to use it for the purpose of oppressing the debtor or of enabling the creditor to acquire the property himself, a court of equity will enjoin a sale or will set it aside if made. *Wittmeier v. Tidwell*, 147 Ala. 354, 40 So. 963 [(1906)], and authorities there cited. Or, as was said in the case of *Castleman v. Knight*, 215 Ala. 429, 110 So. 911 [(1927)]: "If he uses the power to sell, which he gets for that purpose, for another purpose, from any ill motive, to effect means and purposes of his own, or to serve the purposes of other individuals, the court considers that to be what it calls a fraud in the exercise of the power, because it is using the power for a purpose foreign to the legitimate purposes for which it was intended." *Paint Rock Props. v. Shewmake*, 393 So.2d 982, 983–84 (Ala. 1981)."

*Id*. 90 So.3d at 171–172. The Court concluded that because the plaintiffs had not argued or alleged that the power of sale was exercised for any purpose "other than to secure the debt owed by [them]", the trial court did not err in dismissing their negligent foreclosure claim on summary judgment. *Id*.; *see also Phillips v. Mortgage Electronic Registration Systems, Inc.*, 2013 U.S. Dist. LEXIS 49352 *fn. 13, 2013 WL 1498956 *fn. 13 (N.D.Ala. April 5, 2013) (A claim for "wrongful foreclosure" exists under Alabama law only to the extent that it is alleged and evidence shows that the foreclosure was undertaken for an improper purpose); *Selman v. CitiMortgage, Inc.*, 2013 U.S. Dist. LEXIS 37017, 2013 WL 838193 (S.D.Ala. March 5, 2013) (because plaintiffs' pleading reveals that no foreclosure sale occurred and imputes no improper motive to

> CitiMortgage for conducting any such foreclosure (had a sale taken place), plaintiffs have failed to state a cognizable claim for wrongful foreclosure under Alabama law); *In re Sharpe*, 391 B.R. 117, 153 (Bankr.N.D.Ala. 2008) ("Under Alabama law, if an action by a mortgagee was for the purpose of securing the debt owed by the mortgagor, while it may be wrong for other reasons, it cannot, unless some other malady exists, be wrongful foreclosure."); *Ford v. Central Loan Admin.*, 2011 U.S. Dist. LEXIS 115292, 2011 WL 4702912 (S.D.Ala. Oct. 5, 2011) (dismissing wrongful foreclosure cause of action where complaint established that "plaintiff does not know whether a foreclosure sale has taken place" and "says nothing about any improper purpose, ill motive, or action outside the boundaries of the applicable contract").

*Wallace v. SunTrust Mortgage, Inc.*, 974 F. Supp. 1358, 1363-1364 (S.D. Ala. Sept. 26, 2013). Moreover, where the mortgagor/borrower does not dispute that he is in default of the mortgage debt, there can be no wrongful foreclosure. *See Sibley v. National City Mortgage Co.*, 560 Fed. Appx 825, 827 (11th Cir. 2014) ("Sibley and Kenimer's admission that they defaulted on their loan defeated their complaint that PNC attempted a wrongful foreclosure."). Such an undisputed default justifies the foreclosure even if the mortgagee harbors additional motives for wanting to foreclose.

The Anchrums have not attempted to offer any evidence that the foreclosure in question was for some purpose other than collection of the mortgage debt. While they argue that the foreclosure was invalid because of defective notices of intent to accelerate and acceleration (as discussed above under the breach of contract claim), they have not argued that the foreclosure was motivated by some

reason other than the debt itself.[16] In the absence of some evidence creating a genuine dispute of fact concerning Wells Fargo's motive for instituting the foreclosure proceedings, this counterclaim by the Anchrums is meritless and due to be dismissed.

**Conclusion and Recommendation**

In general, the undisputed evidence establishes that the Anchrums defaulted in the payment of their Mortgage in the summer of 2011, and by August, Wells Fargo gave appropriate, thirty-day notice of its intent to accelerate the Note and Mortgage if the default was not timely cured. It is undisputed that the default was

---

16 Although parts of the Anchrums' counterclaim allege that the foreclosure sale price was too low and shocks the conscience, they do not raise this argument in their opposition to Wells Fargo's motion for summary judgment, relying solely on the argument that the notice of intent to accelerate was legally insufficient. Thus, they have abandoned the contention that the sale price was unconscionably low. In any event, the sale price was not so low as to raise questions about the unconscionability of the sale. "[I]f the purchase price is so inadequate as to shock the conscience and raise a presumption of fraud, the inadequacy is a circumstance that may render the foreclosure sale void in Alabama." *Pittman v. Regions Bank*, ___ So. 3d ___, 2016 WL 7030616, *4 (Ala. Civ. App. Dec. 2, 2016) (quoting *Campbell v. Bank of America, N.A.*, 141 So.3d 492, 499 (Ala. Civ. App. 2012) (citing *Hayden v. Smith*, [216 Ala. 428, 113 So. 293 (1927)). In this instance, however, the sale price of $208,901.41 was not so low as to meet this standard, where the estimated fair market value from the "Brokers Price Opinion" was $288,000.00, but the Anchrums admit that the *ad valorem* tax assessed value was $129,300.00. (Doc. 60, pp. 4, 8). Under Alabama law, for a sale price to be so low as to shock the conscience, it must generally be less than two-thirds the fair market value of the property. *Compare Hayden v. Smith*, 216 Ala. 428, 431, 113 So. 293, 295 (1927) ("The decided cases indicate that in general a price less than one-third of the value of the land will be regarded as grossly inadequate.") *and Berry v. Deutsche Bank National Trust Co*, 57 So. 3d 142 (Ala. 2010) (sale price of 40% of the fair market value was inadequate) *with Tidmore v. Citizens Bank & Trust*, ___ So. 3d ___, 2017 WL 1968270, *11 (Ala. Civ. App. May 21, 2017) (sale price *not* inadequate where it was 69% of the original mortgage value). In this case the foreclosure sale price of $208,901.41 was 72.5% of the suggested fair-market value of $288,000.00. Thus, it was not so inadequate as to raise a question of fact under the "shock the conscience" standard.

not cured. In October, Wells Fargo gave appropriate, timely notice of acceleration of the debt and foreclosure of the Mortgage. This pair of notices sufficiently complied with the requirements set out in the terms of the Note and Mortgage. There was not breach of contract under the terms of the Note and Mortgage, and because there was an admitted default of the debt, there was not wrongful foreclosure for an improper purpose.

Based on the foregoing discussion, the magistrate judge RECOMMENDS the following:

1. The motion for summary judgment filed by the Federal Home Loan Mortgage Corporation and Wells Fargo, N.A., be GRANTED, and a writ of ejectment be entered requiring the defendants, Norman D. and Andrea S. Anchrum to deliver peaceable possession of the real property at 552 North Grand View Trail, Alabaster (Maylene), Alabama, to the plaintiff, Federal Home Loan Mortgage Corporation.

2. The counterclaim filed by the defendants, Norman D. and Andrea S. Anchrum, against the Federal Home Loan Mortgage Corporation and Wells Fargo, N.A., be DISMISSED WITH PREJUDICE.

3. That a trial date be set to determine the amount of damages the Federal Home Loan Mortgage Corporation is entitle to recover against Norman D. and

Andrea S. Anchrum for their wrongful retention of possession of the real property.[17]

**Notice of Right to Object**

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection. Failure to object to factual findings will bar later review of those findings, except for plain error. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295,

---

[17] It is not clear whether there is an operative jury demand for this issue. Freddie Mac's original complaint does not demand a jury trial. The Anchrums' counterclaim contains a jury demand only with respect to the counterclaims they assert, not as to all claims in the action. In the counterclaim, under the heading "Relief Requested," appear these two paragraphs:

> 2. That Counterclaimants have and recover against the Counterclaim Defendants a sum to be determined by a jury of their peers in the form of actual damages;
> 3. That Counterclaimants have and recover against the Counterclaim Defendants a sum to be determined by a jury of their peers in the form of punitive damages;
> …

There is no other demand for or reference to a jury trial. There is no demand in the Anchrums' answer for a jury trial with respect to the damages Freddie Mac claims from them for the wrongful detention of the real property. None of the answers filed in response to the Anchrums' counterclaim demanded a jury trial. As all claims in the counterclaim are being dismissed, there appears to remain no issue for which a jury determination has been demanded.

1300 (11th Cir. 2013). Objections also should specifically identify all claims contained in the complaint which the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

Upon receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge. The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

The parties may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit, but may only appeal from a final judgment entered by a district judge.

DONE this 11th day of August, 2017.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE